CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 17 2006

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL EUGENE MONTGOMERY,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:05cv00131 |
| SIA JOHNSON, et al.,<br>Defendants. | )<br>)<br>) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Michael Eugene Montgomery, a federal inmate proceeding pro se, has filed this civil rights action against federal officials pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. Plaintiff alleges that while incarcerated at the United States Penitentiary, Lee County the defendants interfered with his receipt of mail and that the defendants utilized an excessive amount of force to subdue him following his "peaceful protest" on August 6, 2004.

By order entered November 1, 2006, this matter was referred to the undersigned to submit proposed findings of fact and a recommended disposition. This matter is now before the court on defendants' second motion for summary judgment. The court notified Montgomery of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to the defendants' motion may result in dismissal and/or summary judgment being granted for the defendants. As Montgomery has filed a response to defendants' motion and the time allotted for any further response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that Montgomery has not presented any issue of material fact as to his allegation that defendants tampered with his mail and that the defendants are entitled to judgment as a matter of law on this claim. Further, the undersigned finds that Montgomery fails to raise any claim of constitutional magnitude against Lt. Friss. However, the undersigned finds that there is a dispute of material fact regarding the inital use of force on August 6, 2004 and as related to Montgomery's subsequent confinement in four point and ambulatory restraints. Accordingly, the undersigned recommends that defendants' motion for summary judgment be granted in part and denied in part and that this matter be set for trial.

I.

Montgomery alleges that during the summer of 2004, defendants purposefully delayed his receipt of incoming mail. Montgomery asserts he made various complaints regarding the delay and/or failure to deliver his incoming mail to no avail. Finally, frustrated by the lack of response to his complaints regarding the mail issue as well as other issues, on August 6, 2004, Montgomery and three other inmates staged a "peaceful protest" during outdoor recreation. Montgomery and the others refused to submit to hand restraints until they were provided with the opportunity to speak to someone in a position of authority regarding their concerns. In response to his protest, Montgomery alleges that correctional officers shot numerous rounds of rubber bullets and gas cartridges into the recreation cell. During the crossfire, Montgomery was hit more than twenty times with munitions and covered with chemical residue. Additionally, Montgomery alleges that after he was removed from the recreation cage he remained passive and compliant, but was not given adequate opportunity to wash the chemical residue from his eyes or body, was not adequately examined by a nurse, and was subsequently placed in four point

2

restraints for approximately eighteen hours and then ambulatory restraints for an additional twelve hours.

In support of his claims, Montgomery asks the court to incorporate the video recordings of the confrontation and his subsequent restraint into his response to defendants' motion. In brief, the recordings establish the following[1]: On August 6, 2004, Montgomery and three other inmates refused to submit to restraints and be removed from the recreation cage until afforded the opportunity to speak to a person of authority regarding their concerns. Shortly thereafter officers fired chemical munitions and rubber bullets into the cell. Montgomery was hit numerous times with those munitions, and he immediately began to show signs of discomfort and to state that he could not see. Within seconds Montgomery obeyed orders to lie down, and he remained prone and submissive while placed in restraints. Thereafter, Montgomery remained passive and compliant while brought inside the jail, restrained in the hallway, and placed in four point restraints. Throughout this period Montgomery voiced repeated complaints of severe eye discomfort; however, he was only afforded a few seconds in the shower and some saline solution for his eyes. Montgomery was then restrained, face up, in four point restraints. He continued to complain that his eyes were burning and begged staff to thoroughly rinse his eyes, but no further efforts to rinse his eyes are evident on the video recording.

From the time Montgomery submitted to restraints in the recreation cage to the time he was placed in four point restraints, the video shows that Montgomery neither voiced threats nor exhibited violent behavior. No video footage was provided documenting the hours Montgomery

---

[1]For a detailed statement of the events transpiring on August 6, 2004, see the Report and Recommendation entered on August 18, 2006, pages 15-16. See Docket Entry 126.

spent in four point restraints. However, video footage of his release from four point restraints, approximately eighteen hours later, revealed him to be non-violent, non-threatening, and compliant. Yet, he was placed in ambulatory restraints for an additional twelve hours.

### III.

In support of their motion for summary judgment, defendants argue that Montgomery fails to allege a claim under Bivens and that in the event he actually suffered a constitutional injury, defendants are entitled to qualified immunity.

As to the alleged use of force on August 6, 2004, defendants argue that they utilized a reasonable amount of force to quell the disturbance initiated by Montgomery and several other inmates. (Def. M. Summ. J. at 15-18) Further, defendants assert that as Montgomery had no actual injury following that use of force, he fails to state a cognizable claim for relief. (Def. M. Summ. J. at 12-14, 18) Next, defendants contend that in the event Montgomery's constitutional rights were violated, defendants are entitled to qualified immunity. (Def. M. Summ. J. at 25-27) Finally, defendants argue that several named defendants are not liable for any injury stemming from the August 6, 2004 incident because they did not personally use any force to restrain Montgomery. (Def. M. Summ. J. at 24-25)

### IV.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996)(stating that the court need not accept plaintiff's "unwarranted deductions,"

4

"footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations")(internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### A. Mail Tampering

Montgomery alleges that during the summer of 2004 defendants interfered with his prompt receipt of incoming mail and that following the August 6, 2004 incident he received several pieces of mail which were back dated two to three weeks. Montgomery does not allege that the delay in his receipt of mail hindered his ability to communicate with the courts, interfered with his ability to prosecute a civil action, or caused any other actual harm. Outgoing and incoming mail may be opened and inspected by prison officials; thus, the opening, inspection, and any resultant delay does not state a claim of constitutional significance. See Altizer v. Deeds, 191 F.3d 540, 548-49 & n.14 (4th Cir. 1999). Further, state officials cannot be held liable under Bivens for negligent or intentional destruction, loss, or interference with mail or other personal property. Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)(citing Daniels v. Williams, 474 U.S. 327 (1986)), Bowler v. Young, 2003 WL 24253707 at *1 (W.D. Va June 25, 2003), aff'd, 78 Fed. Appx. 281 (4th Cir. 2003). Accordingly, the undersigned recommends that

5

Montgomery's allegations related to any delay in his receipt of mail be dismissed for failure to state a claim on which relief can be granted.

## B. Excessive Force

Montgomery claims that the defendants violated his Eighth Amendment rights by utilizing an excessive amount of force to subdue him on August 6, 2004 and by thereafter placing him in four point and ambulatory restraints for approximately thirty hours. Defendants argue that the initial use of force was justified and that Montgomery suffered no actual injury and, thus, fails to state a claim of constitutional magnitude. Defendants fail to address Montgomery's allegations regarding the constitutionality of his subsequent restraint.

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically the court should consider the following factors: "the need for

6

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. at 7 (quotations omitted); Williams, 77 F.3d at 762.

Also, the inmate must prove the correctional officers' actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998)(quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)(quoting Norman, 25 F.3d at 1263). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." Id. In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

According to Montgomery, on August 6, 2004, he engaged in a peaceful protest following months of disregarded complaints about mail, personal supplies, and counselor issues so that he could speak to a staff member with some authority regarding his concerns.

7

Defendants reacted by shooting him more than twenty times with rubber bullets and gas pellets. Additionally, once he complied with their orders and was restrained, defendants failed to allow him adequate opportunity to rinse the chemical residue from his eyes and body, his complaints that the chemical residue was burning his eyes were ignored, he was placed in four point restraints for approximately eighteen hours, and was subsequently put into ambulatory restraints for approximately twelve hours.

In response, defendants argue the use of force was justified because Montgomery failed to immediately comply with correctional officers' orders and advised correctional officers that they would need to use some amount of force to quell the protest. Additionally, defendants assert that Montgomery had no actual injury because a nurse flushed his eyes three times with saline solution, she examined his chest following his restraint, and she determined he had no obvious injury. (Def. M. Summ. J. at 9) However, defendants concede that the nurse did not examine Montgomery until he after he was placed in four point restraints, she did not recheck his eyes or respond to his complaints that his eyes were burning, and only examined him one other time during the eighteen hours he remained in four point restraints. (Def. M. Summ. J. at 9) Defendants offer nothing suggesting Montgomery was violent, threatening, and/or noncompliant after the initial use of force nor any other evidence which would support their decision to put him in four point restraints for eighteen hours immediately followed by an additional twelve hours in ambulatory restraints.

When construed in the light most favorable to Montgomery, there is clearly a question of material fact as to whether the initial use of force and Montgomery's subsequent prolonged confinement in four point and ambulatory restraints following the August 6, 2004 incident was

8

justified. See Williams, 77 F.3d at 765. Montgomery asserts, and the video recording supports his claim, that his protest on August 6, 2004 was peaceful and was designed only to allow him the opportunity to speak with a person of authority regarding his ongoing concerns. Further, the recording establishes that Montgomery was calm, compliant, and non-threatening following the initial display of force. Yet, he asserts, and the evidence supports his claim, that he was placed in four point restraints for approximately eighteen hours. Likewise, when he was removed from four point restraints he remained calm, compliant, and non-threatening, but was still immediately put in ambulatory restraints for an additional twelve hours. Defendants have not addressed the facts that Montgomery was given minimal opportunity to rinse chemical residue from his body and eyes, that the nurse and correctional officers ignored his repeated complaints of intense eye pain, and that he was physically restrained for approximately thirty hours though he remained calm, compliant, and non-threatening.

Accordingly, the undersigned recommends that the court find that material issues of fact exist as to whether Montgomery suffered nothing more than de minimis injury, and, if so, whether the amount of force used was "of a sort 'repugnant to the conscience of mankind.'" Norman, 25 F.3d at 1263, n. 4. Furthermore, at this point, a material issue of fact exists as to whether the denial of medical treatment and the lengthy confinement in four point restraints and ambulatory restraints was done in a good faith effort to restore order or was done with malice. See Whitley, 475 U.S. at 320-21; Sadler v. Young, 325 F.Supp. 2d 689, 702 (W.D. Va. 2004)(stating that restraining an inmate in four point restraints beyond the period when the inmate posed a threat to himself or others is unconstitutional). Therefore, at this stage the

9

undersigned recommends that the court find that genuine issues of material fact exist as to both the subjective and objective elements of Montgomery's excessive force claim.

V.

Defendants assert that they are entitled to qualified immunity as to the claim of excessive force. The qualified immunity defense shields government officials performing discretionary functions from liability for monetary damages to the extent they can establish that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To address a defense of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Conn v. Gabbert, 526 U.S. 286, 290 (1999). However, when the parties' versions of the underlying events giving rise to the claim are in direct contradiction, resolution of the qualified immunity issue is inappropriate at the summary judgment stage. See e.g., Rainey v. Conerly, 937 F.2d 321, 324 (4th Cir. 1992)(finding that the district court properly denied defendant's immunity based summary judgment motion because "a determination of what actually happened is absolutely necessary to decide whether [defendant] could reasonably have believed that his actions were lawful"); Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)(holding that summary judgment was precluded where resolution of a claims depends on a determination of credibility as to the underlying events).

As noted above, the court finds that there is an issue of material fact as to whether the initial use of force was necessary as well as whether Montgomery's continued confinement in four point and ambulatory restraints following the August 6, 2004 incident was constitutional.

10

Accordingly, the undersigned finds that defendants are not entitled to summary judgment on the issue of qualified immunity at this stage in the litigation.

## VI.

Finally, defendants assert that Capt. Bondurant, Special Investigative Agent ("SIA") Johnson, and Lt. Friss were not personally involved in the August 6, 2004 incident and, thus, should be dismissed from this action.

To state a cause of action under Bivens, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of law. See West v. Atkins, 487 U.S. 42 (1988). Montgomery alleges that Cpt. Bondurant and SIA Johnson were personally involved in the initial use of force, his lengthy placement in four point restraints, and his subsequent confinement in ambulatory restraints. Specifically, he alleges that SIA Johnson recommended the use of force and that Cpt. Bondurant approved the use of force and Montgomery's subsequent placement and continued confinement in restraints. Defendants concede that SIA Johnson determined that some use of force would be necessary to quell the disturbance on August 6, 2004 and that he relayed this opinion to other staff. (Def. M. Summ. J. at 6) Accordingly, the undersigned finds Montgomery has alleged sufficient personal involvement by Cpt. Bondurant and SIA Johnson to allow his claims to go forward against these defendants. However, Montgomery does not make any specific allegation against Lt. Friss related to the excessive force incident on August 6, 2004. Accordingly, the undersigned recommends that Lt. Friss be dismissed from this action.

11

## VII.

For the reasons stated above, the undersigned recommends that defendants' motion for summary judgment be granted in part and denied in part. Specifically, the undersigned finds that defendants are entitled to judgment as a matter of law as to Montgomery's allegations related to mail tampering and recommends that this claim be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Likewise, the undersigned finds that Montgomery failed to raise any claims of constitutional magnitude against Lt. Friss and recommends that all claims against Lt. Friss be dismissed. However, as to Montgomery's excessive force claim, the undersigned finds that there are numerous disputed issues of material fact precluding summary judgment and, thus, recommends that defendants' motion for summary judgment on this issue be denied.

The clerk is directed to immediately transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Entered this 17th day of November, 2006.

Michael F. Urbanski
United States Magistrate Judge